**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | |
|---|---|
| CHRISTOPHER REED, | ) CASE NO. 3:20-CV-02611-CEH |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant, | ) **MEMORANDUM OPINION AND ORDER** |

**I.   Introduction**

Plaintiff, Christopher Reed on behalf of his deceased mother Sherry Ann Reed ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 14). Because the ALJ failed to follow proper procedures, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II.   Procedural History**

On August 8, 2018, Claimant filed applications for DIB and SSI, alleging a disability onset date of October 1, 2013.[1] (ECF No. 12, PageID #: 149–50). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative

---

[1] Claimant previously applied for DIB and SSI on November 12, 2014. The applications were denied on December 8, 2014. The ALJ did not find a reason to reopen the previous applications and found the decisions were binding. As such, the established alleged onset date is November 13, 2014. (ECF No. 12, PageID #: 94).

1

law judge ("ALJ"). (ECF No. 12, PageID #: 251). On September 3, 2019, an ALJ held a video hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 114). On November 12, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 91). The ALJ's decision became final on September 17, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 83).

On November 20, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15, 17, 18). Claimant asserts the following assignment of error:

> The ALJ's RFC determination is not supported by substantial evidence because she failed to properly evaluate the opinion of consulting examiner Andria Doyle, Ph.D.

(ECF No. 15 at 3).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant testified that she is 50 years-old, she has a 12th grade education, and she has a driver's license. The claimant noted past work as a scanner operator at Blanchard Valley Healthcare, where she made labels to organize patient's files. The claimant testified that she is unable to work because she can only lift 10 pounds, due to back problems, she cannot sit for long periods of time, and she cannot walk very far. She noted that she cleans her home about once a week, she does her grocery shopping once a month, and she has difficulty interacting with others.

(ECF No. 12, PageID #: 102).

#### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

[I]n September 2014, at Orchard Hall, the claimant noted multiple psychosocial stressors, including severe financial difficulties. (Exhibit 1F at 4). She was diagnosed with probable post-traumatic stress disorder, a mood disorder not otherwise specified, and a personality disorder. (Exhibit 1F at 5). Later in September 2014, the claimant presented to the emergency room with a plan to run her truck into a train. She was admitted for psychiatric stabilization and monitoring. (Exhibit 1F at 7). The claimant was discharged on Lithium. (Exhibit 1F at 8). The claimant was also linked and a file was opened at Century Health for counseling. (Exhibit 1F at 20).

In a psychiatric review, conducted in November 2014, at Century Health, it was noted that the claimant presents with symptoms of sadness, moodiness, anxiety, hyperactivity, mood swings, hypersensitivity to others, impulsivity and difficulty focusing. She had a history of hallucinations and hand tremors. Her speech was clear and understandable. Her thought process was scattered. Her concentration and focus w[ere] poor. She denied any hallucinations. She denied any suicidal or homicidal thoughts. Her short and long-term memory was fair. Her insight and judgment were fair to poor. She was diagnosed with a mood disorder NOS, a brain condition NOS, and a personality disorder NOS. (Exhibit 6F at 4-5). In December 2014, the claimant noted that she "stopped all her medications. She left them at the trailer and when she went back to get them, several days later, she decided not to take them." The claimant also decided not to start the Lithium because she was afraid of the effects and the Trazodone made her hyper. She went back to taking five extra-strength Tylenol PMs to sleep. The claimant stated that she "overtook the Trazodone up to five tablets and did not sleep.["] She noted that her "father died two weeks ago and I'm mad at him, because he left her mother without any insurance to bury him." The claimant was requesting mood medication and also a sleep aid. The claimant was given a sleep aid only. (Exhibit 6F at 7).

An MRI of the claimant's spine in January 2015 showed mild to moderate multilevel degenerative changes without significant canal or foraminal stenosis. (Exhibit 4F at 28). In February 2015, the claimant arrived stating, "I need my medications. I've been off of them for a while." She appeared vague and confused about why she was not taking her medications. She was provided with medication education and new scripts. (Exhibit 6F at 9). In March 2015, the claimant noted that she obtained a voucher for housing but has not picked up or searched for an apartment. She stated that she, "became light headed and then slept for about 27 hours after taking Buspar. She stopped taking it." She was sleeping well and

3

taking the Lithium as prescribed. She stated no additional side effects after discontinuing Buspar. She was overall stable and improved, with no suicidal thoughts. (Exhibit 6F at 11).

In March 2015, the claimant sought chiropractic care at Kirk Chiropractic. (Exhibit 3F). In April 2015, at Century Health, it was noted that the claimant's Lithium level was low at 0.34. She stated that she forgot to take the second dose often and had a bad GI bug th[at] last[ed] three days. She noted that she was starting to feel better. She indicated that she was working part-time cleaning offices. She averred that she had some continued mood swings and would try to take the Lithium more regularly. (Exhibit 6F at 13).

In August and September 2016, the claimant was in physical therapy. Her left hip trochanteric bursa was injected with Depo-Medrol. She was told that she could resume normal activities the next day. (Exhibit 2F at 10).

In September 2016, at Blanchard Valley Pain Management, the claimant was evaluated for chronic pain involving the lumbar region. As best that the doctors could determine, it appeared that the claimant found her low back pain to be quite bothersome to her when she transitioned from sitting to standing, as well as doing various activities throughout the day. (Exhibit 10F at 4). However, she had no evidence of sciatica or radiculopathy by history, or by examination. (Exhibit 10F at 5). In September 2016, the claimant underwent L3, L4 and L5 lumbar dorsal medial branch blocks. (Exhibit 10F at 7).

In March 2017, at Century Health, it was noted that the claimant had not been seen for almost two years, but she was coming back because she was working with OOD, and they said she needed to come in, "because her psychological well-being depends on being medicated, she quit her jobs because of anxiety." The claimant reported that she has gotten multiple jobs and lost them, sometimes she quits. She stated that she gets overwhelmed, or she loses her transportation, and she has "stresses at home" as she is taking care of mother after father passed. Reports having highs where she spends too much money on things she does not need, and then she has no money to pay bills. (Exhibit 6F at 16). In May 2017, the claimant reported that she is "doing OK now." (Exhibit 6F at 17). In July 2017, the claimant noted that she "stopped playing a roleplaying game, as she felt she was getting addicted." She indicated that it was difficult to stop, and she has not been able to find a fun activity to replace it. She noted that she was "working as in-home caregiver." (Exhibit 6F at 18). She was also complaining

4

of chronic hip pain. (Exhibit 5F at 4). In October 2017, the claimant noted that she was having surgery for her back - an ablation. Has had before and felt it was helpful. (Exhibit 6F at 19). In January 2018, the claimant reported that her medications were working well. (Exhibit 6F at 20). In March 2018, the claimant noted that she lost her job, and she was looking for a new job. (Exhibit 6F at 22). In April 2018, the claimant reported that her depression is better, but her anxiety prevented her from leaving the house. Nevertheless, she reported that she drove[] herself to the clinic. (Exhibit 6F at 24). In May 2018, an MRI of the claimant's spine showed mild degenerative change with no significant central canal stenosis or neural foraminal narrowing. There was also mild constriction of the left lateral recess at L4-5. (Exhibit 5F at 16). In June 2018, the claimant indicated that [] "she was back to counseling, and her anxiety is better." Her mood was good. She was smiling, pleasant, joking, in a very good mood, but not manic. (Exhibit 6F at 25). In July 2018, the claimant underwent a left L3-4 and L5 radio frequency ablation and reported a 50% reduction of her pain. (Exhibit 10F at 114).

In September 2018, at Century Health, the claimant reported that she was very, very anxious. She also reported that she quit her job because of her back problems. She noted that she sold her car in order to pay bills. She reported that due to depression, she was unable to focus. (Exhibit 12F at 6).

In October 2018, at Blanchard Valley Pain Management, the claimant underwent a bilateral SI joint injection under fluoroscopic guidance. (Exhibit 13F at 4). The claimant reported an 80% reduction in her low back pain. (Exhibit 13F at 57).

In a consultative psychological examination, conducted in November 2018, Andrea Doyle, Ph.D., noted that the claimant's memory was somewhat compromised during the interview and deficits were noted during an assessment of the claimant's mental status. Some distractibility was observed. Her reasoning appeared good, and she understood interview questions and instructions without difficulty. Responses demonstrated a fair ability to abstract. She was diagnosed with a bipolar disorder, a panic disorder, and post-traumatic stress disorder. (Exhibit 11F at 6-7).

In December 2018, at Century Health, the claimant reported that her anxiety has improved with Imipramine. (Exhibit 12F at 8). In February 2019, the claimant reported that she had been on Primidone for her hand tremor in the past, which was helpful, and she wanted to try this again. (Exhibit 19F at 7).

5

> In April 2019, at Blanchard Valley Health System, the claimant was diagnosed with fibromyalgia after a finding of 16 out of 18 pressure points. (Exhibits 14F at 8, 17F at 10). In May 2019, a CT scan of the claimant's abdomen showed no acute findings. (Exhibit 18F at 12). In June 2019, it was noted that based on the claimant's history and physical examination, there was no evidence of rheumatoid arthritis, SLE, or other diffuse connective tissue disease, seronegative spondyloarthropathy, or other inflammatory arthritis. The presence of rheumatoid factor was non-specific (Exhibit 15F at 6). In July 2019, the claimant was complaining of knee pain. X-rays showed a stable knee series, and no acute process was identified. (Exhibit 15F at 13).

(ECF No. 12, PageID #: 102–04).

    **C.**    **Opinion Evidence at Issue**

On November 15, 2018, Andria Doyle, Ph.D., performed a psychological evaluation of Claimant pursuant to a Division of Disability Determination referral. (ECF No. 12, PageID #: 782–87). Dr. Doyle filled out a functional assessment detailing Claimant's abilities and limitations. (ECF No. 12, PageID #: 788–89). She opined that Claimant demonstrated "significant impairments in remembering" and limitations in performing simple tasks and multi-step tasks. (ECF No. 12, PageID #: 788). Claimant was able to maintain attention during the exam, but Dr. Doyle noted that Claimant's mental status examination performance suggested deficits in attention. (ECF No. 12, PageID #: 788). Dr. Doyle suggested that Claimant's history of frequent job changes when job stress arose suggested "difficulty in maintaining persistence and pace." (ECF No. 12, PageID #: 788). Finally, Dr. Doyle suggested that Claimant "report[ed] demonstrate[d] psychological symptoms that would likely interfere with work-related stress tolerance abilities." (ECF No. 12, PageID #: 788). Due to various disorders and symptoms, Claimant "may respond negatively to perceived pressures at work (e.g., become easily frustrated,

6

tearful, have difficulty completing complex tasks that require sustained attention)." (ECF No. 12, PageID #: 788).

The ALJ found this opinion not persuasive. She reasoned that there was no evidence that Claimant could not work at the level she assigned. She stated that Claimant's ability to work with the elderly showed the ability to perform tasks, interact with others, and maintain attention "to do puzzles or color." (ECF No. 12, PageID #: 104). The ALJ also stated that Dr. Doyle did not include a "function by function assessment." (ECF No. 12, PageID #: 105).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: lumbar degenerative disc disease; fibromyalgia; and psychological conditions variously described as: mood disorder, PTSD, borderline personality disorder, bipolar disorder, and a panic disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours out of an 8-hour workday and can stand and/or walk for 6 hours out of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. With the bilateral upper extremities, she can frequently handle and finger. She cannot work around unprotected heights or unprotected moving mechanical machinery. The claimant can understand, remember, and carry out simple, routine tasks but not a production rate pace such as required working on an assembly line or conveyor belt. She can make judgments on simple work, and respond appropriately to usual work situations and changes in a routine

> work setting that is repetitive from day to day with few and expected changes. All changes are to be explained in advance and implemented gradually. She cannot have interaction with the general public and can only be in the proximity of the general public on an occasional basis. She can have occasional interaction with supervisors and coworkers with no team or tandem with coworkers. Interaction with coworkers shall consist of casual communication with no problem solving, negotiating, or conflict resolution and tasks performed cannot be dependent upon more than occasional verbal communication between coworkers to ensure that a specific work step or process is completed.

(ECF No. 12, PageID #: 97, 100–01).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.** **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C.** **Discussion**

Claimant raises one issue on appeal. Claimant argues that the ALJ failed to properly evaluate consultative examiner Dr. Doyle's medical opinion. Claimant argues that the ALJ erred because: (1) the ALJ "put the cart before the horse" by determining the RFC and then trying to make the opinion evidence fit it, and (2) the ALJ failed to apply the supportability and consistency factors as required by 20 C.F.R. § 404.1520c. The Commissioner appears to concede that the ALJ failed to discuss consistency and supportability but argues that she was not required

9

to because Dr. Doyle's statements did not constitute medical opinions.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2).

Of course, a prerequisite for requiring any articulation is that the evidence be a medical opinion. A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations" in her ability to perform the physical and mental demands of work activities and her ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Judgments about the nature and severity of a claimant's impairments, medical history, diagnoses, treatment prescribed with response, and prognoses are all considered "other medical evidence" and are not medical opinions. 20 C.F.R. § 404.1513(a)(3). The ALJ is not required to explain how she considered medical evidence. 20 C.F.R. § 404.1520c (stating only that the ALJ is required to articulate how she considered medical opinions and prior administrative findings).

Dr. Doyle filled out a functional assessment detailing Claimant's abilities and limitations. She opined that Claimant demonstrated "significant impairments in remembering" and had limitations in performing simple tasks and multi-tasking. She noted that Claimant's examination performance suggested attention deficits and that her job history suggested difficulty in

10

maintaining persistence and pace. She further stated that Claimant's psychological symptoms "would likely interfere with work-related stress tolerance abilities." (ECF No. 12, PageID #: 788). The ALJ discussed this opinion and stated:

> The undersigned finds that Dr. Doyle's opinion is not overall persuasive because there is no evidence that the claimant cannot perform at [the] level assigned: she was working with elderly, which shows the ability to perform tasks, interact with others, and maintain attention to do puzzles or color, etc. Moreover, there is no function by function assessment made by the doctor. That said, she has been limited to simple, routine tasks with limited interaction with others.

(ECF No. 12, PageID #: 104–05).

The Commissioner suggests that Dr. Doyle's assessment was not a medical opinion because it did not delineate what Claimant could do despite her impairments but simply stated Claimant had "'impairments,' 'deficits,' and 'limitations' in remembering, attention, performing simple and complex tasks, and that she 'may respond' negatively in some work situations." (ECF No. 17 at 10). Claimant replies that Dr. Doyle's use of words like "significant" instead of "marked" does not mean that her assessment was not a medical opinion. Dr. Doyle, according to Claimant, indicated several limitations and to state otherwise would be a "gross mischaracterization of this evidence which the state agency itself sought after in order to provide an opinion of [Claimant's] limitations." (ECF No. 18 at 3). The Court agrees.

As noted above, a medical opinion includes statements about whether a claimant has "one or more impairment-related limitations" in her ability to perform the mental demands of work activities and her ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Work activities include "understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii). There is no requirement that a medical

11

opinion include a function by function assessment or use certain language. Dr. Doyle opined that Claimant had various impairment-related limitations. She suggested, as the Commissioner notes, that Claimant had limitations in remembering, attention, and performing simple and complex tasks. She also explained that Claimant's psychological symptoms may affect her ability to tolerate work related stress. These are the exact medical opinions that the ALJ was required to evaluate. The Commissioner was, therefore, incorrect in arguing that Dr. Doyle did not provide a medical opinion. As such, the ALJ was required to specifically explain the consistency and supportability of the opinions.

While the Commissioner does not argue that the ALJ properly evaluated the opinion, the Commissioner does argue that the RFC assessment "accounted for many of Dr. Doyle's statements" and Claimant "has not shown how Dr. Doyle's statements required any further limitation." (ECF No. 17 at 11). Essentially, the Commissioner asserts that any error in the ALJ's analysis was harmless. Claimant responds that the ALJ's failure to properly apply the regulations is harm in itself. Additionally, Claimant argues that had the ALJ adopted Dr. Doyle's opinion, Claimant "may have been found disabled pursuant to SSR 85-415 and SSR 96-8p because the vocational expert testified that limitations such as those outlined by Dr. Doyle would exceed employer tolerances for work. T. 65." (ECF No. 15 at 17).

Claimant's first reason is sufficient. Failure to follow the regulations is not harmless error. While the new regulations are plainly "less demanding than the former rules governing evaluation of medical source opinions . . . 'they still require that the ALJ provide a coherent explanation of her reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021) (citations omitted). The ALJ did not provide such an explanation. Although the Commissioner does not make this argument, the Court could interpret

12

the ALJ's discussion of Claimant's ability to work with the elderly as discussing the consistency of the opinion. However, there is nothing the Court can construe as discussing supportability and the Commissioner does not argue otherwise. Assuming an argument could be made that the ALJ's statement about there not being a function by function assessment implied that Dr. Doyle's opinion was not supported, this argument would be rejected. The supportability factor considers how relevant the objective medical evidence and supporting explanations supporting a medical opinion are. 20 C.F.R. § 404.1520c(c)(1). The fact that Dr. Doyle did not provide a function by function analysis—which she was not required to do—says nothing about the objective evidence and supporting explanations underlying her opinion. Thus, the ALJ failed to discuss supportability. This failure requires remand because, "without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021).

### VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

IT IS SO ORDERED.

Dated: December 14, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE
